UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


MARY SCHAEFFER,

    Plaintiff,

-vs-

TRACTOR SUPPLY COMPANY,

    Defendant.
_____/

Case No. 08-15000
Hon: AVERN COHN

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

**I. INTRODUCTION**

This is an employment discrimination case under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq. and the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101 et seq. with pendent state law claims. Defendant Tractor Supply Company (Tractor Supply) sells farm and ranch equipment throughout the country and has a number of stores in Michigan. Plaintiff Mary Schaeffer (Schaeffer) was employed by Tractor Supply as a multi-store manager in central Michigan. Schaeffer claims that Tractor Supply discriminated against her by replacing her as area manager while she was on non-FLMA medical leave and by creating a hostile work environment based on gender.

The complaint is in eight counts:

(I)      Violation of Title VII – Sex Discrimination/Disparate Treatment

(II) Violation of the Michigan Elliott-Larsen Civil Rights Act (ELCRA), Mich. Comp. Laws § 37.2201 et seq. – Sex Discrimination/Disparate Treatment,

(III) Violation of Title VII – Sex Discrimination/Hostile Work Environment,

(IV) Violation of the ELCRA – Sex Discrimination/Hostile Work Environment,

(V) Violation of the ADA – Disability Discrimination

(VI) Violation of the Michigan Persons with Disabilities Civil Rights Act (PWDCRA), Mich. Comp. Laws § 37.1101 et seq. – Disability Discrimination

(VII) Violation of Title VII – Retaliation for Protected Activity

(VIII) Violation of ELCRA – Retaliation for Protected Activity

Now before the Court is Tractor Supply's motion for summary judgment on grounds that it did not discriminate against Schaeffer on the basis of her sex or disability but replaced her as area manager because her medical leave had extended into its busy season. Schaeffer says that genuine issues of material fact remain as to whether Tractor Supply's proffered reason for replacing her as area manger was pretextual. For the reasons that follow, Tractor Supply's motion will be granted.

## II. FACTS

Tractor Supply operates retail stores throughout the country. Each store has a manager. Stores are further divided into districts or areas and each has a manager, called a multi-store manager.

On July 9, 2007 Schaeffer began working at Tractor Supply as an area manager in training. Schaeffer had previously worked as a multi-store manager for JoAnn Fabric. George Van Eron (Van Eron), a regional vice president, was Schaeffer's supervisor and

John Ordus (Ordus) was her mentor.

Schaeffer was one of two female multi-store managers at Tractor Supply. She says that the male store and multi-store managers in Michigan resented the fact that Van Eron had hired a female without their input and in place of the male store managers who were seeking promotions. She says that these co-workers created a hostile working environment. The specific instances of hostility that Schaeffer cites will be addressed in the discussion of Schaeffer's hostile work environment claim.

On September 30, 2007 Schaeffer was promoted to the position of area manager and was assigned six stores: Lansing West, Lansing North, Charlotte, Ionia, St. Johns, and Owosso. The six stores had previously been part of the Eastern and Western Michigan districts. Schaeffer contends that she was assigned the lowest performing stores in the region. Tractor Supply says that it accommodated Schaeffer's personal needs by assigning her the stores that were close to her home.

In October, 2007 Van Eron was promoted to Divisional Vice President and Moira Corcoran-Giles (Giles) succeeded him as Regional Vice President. After that time Schaeffer and the other multi-store managers in Michigan reported directly to Giles.

On January 31, 2008 Schaeffer requested and was granted non-FMLA medical leave. She was informed that she was not eligible for FMLA medical leave. She was also informed that Tractor Supply's non-FMLA medical leave policy does not include job security. If an employee on non-FMLA medical leave is replaced, she may not return to her previous job, but is permitted to reapply to any open jobs within the company. Schaeffer extended her medical leave several times, providing a variety of reasons including the flu, high blood pressure, sciatica, and depression.

On February 22, 2008 Schaeffer submitted a note extending her leave from February 25, 2008 until March 31, 2008.  In the middle of February, 2008 Giles decided to fill Schaeffer's area manager position.  March, April, and May are Tractor Supply's busiest months and it asserts that Schaeffer was replaced for this reason.  Dale Torbet (Torbet) was promoted from the position of store manager to area manager and managed the same stores that Schaeffer had previously managed.

Schaeffer remained on medical leave until July 30, 2008 when she had exhausted the six months of non-FMLA medical leave provided by Tractor Supply.  At that time she was administratively terminated.  Prior to her termination, and while maintaining that she was medically unable to work, Schaeffer began working at Party City.  Schaeffer completed an employment application for the job at Party City on July 14, 2008 and was offered employment the same day.  She submitted a statement to Party City saying that she worked 9.5 hours in the pay period ending on July 19, 2008.  She did not inform Tractor Supply that she was employed elsewhere.

Schaeffer filed two complaints with the EEOC.  On May 5, 2008 she filed a complaint alleging discrimination on the basis of disability and sex.  She said that she was discharged on March 5, 2008 after taking medical leave due to her disability.  On December 14, 2008 she filed a second complaint alleging discrimination on the basis of sex and gender and retaliation.  She said that she was discharged on July 30, 2008 while on sick leave and believed that the discharge was in retaliation for her first EEOC complaint.

## III. STANDARD OF REVIEW

Summary judgment is appropriate when the evidence submitted shows that "there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©. "A party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(a). Accordingly, the movant bears the initial responsibility of informing the court of the basis for its motion, and identifying what it believes demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). When a motion for summary judgment is properly made and supported, an opposing party must set out specific facts showing a genuine issue for trial. Fed. R. Civ. P. 56(e). All facts and inferences should be viewed in the light most favorable to the nonmoving party. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970).

## IV. ANALYSIS

### A. The Law

#### 1. Title VII Sex Discrimination: Disparate Impact

Title VII prohibits discrimination on the basis of sex. 42 U.S.C. § 2000e-2. To establish a claim of disparate treatment under Title VII a plaintiff must prove, either through direct or circumstantial evidence, that an employer's decision was the product of intentional discrimination. Sybrandt v. Home Depot, 560 F.3d 553, 557 (6th Cir. 2009).[1] When a

---

[1] Schaeffer relies solely on circumstantial evidence to support her claims. Therefore the Court will not address legal standards related to direct evidence of discrimination.

5

plaintiff relies on circumstantial evidence, the court must follow the McDonnell Douglas burden shifting framework. See e.g., Grosjean v. First Energy Corp., 349 F.3d 332, 335 (6th Cir. 2003). Under this framework a plaintiff must first establish a *prima facie* case of discrimination, the burden then shifts to the defendant to articulate a non-discriminatory reason for its action, and the plaintiff must then demonstrate that the defendant's proffered reason was merely a pretext for prohibited discrimination. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-05 (1973).

To establish a *prima facie* case of sex discrimination under Title VII, a plaintiff must show that (1) she is a member of a protected class, (2) she was qualified for the position, (3) she suffered an adverse employment action, and (4) she was "either replaced by someone outside the protected class or treated differently than similarly situated, non protected employees." Noble v. Brinker Intern, Inc., 391 F.3d 715, 728 (6th Cir. 2004).

Once a plaintiff has established a prima facie case of sex discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its action. Grosjean, 349 F.3d at 335. The defendant only bears a burden of production; the burden of persuasion remains with the plaintiff. Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1082 (6th Cir. 1994)

After a defendant has provided a non-discriminatory reason, the plaintiff must "demonstrate by competent evidence that the presumptively valid reasons for the [employment action] were in fact a coverup for a discriminatory reason." McDonnell Douglas, 411 U.S. at 805. The Sixth Circuit has noted that "[p]retext is a commonsense inquiry: did the employer fire the employee for the stated reason or not?" Chen v. Dow Chemical Corp., 580 F.3d 394, 400 n.4 (6th Cir. 2009). Pretext can be shown directly by

proving that an employer's decision was more likely motivated by a discriminatory purpose or indirectly by showing that the employer's proffered reason is not credible. Manzer, 29 F.3d at 1082. When making a case based on the credibility of an employer's explanation, a plaintiff must demonstrate that the proffered explanation (1) has no basis in fact, (2) did not actually motivate the adverse action, or (3) was insufficient to motivate the adverse action. Macy v. Hopkins County School Board of Education, 484 F.3d 357, 366 (6th Cir. 2007); Manzer, 29 F.3d at 1084.

To show that a defendant's proffered reason has no basis in fact, a plaintiff must prove that proffered reason is "factually false." Manzer, 29 F.3d at 1084. A plaintiff can demonstrate that a defendant's proffered reason was insufficient by showing that similarly situated employees who are outside of the protected class were not subject to the adverse employment action. Id. ("The third showing is also easily recognizable and, ordinarily, consists of evidence that other employees, particularly employees not in the protected class, were not fired even though they engaged in substantially identical conduct to that which the employer contends motivated the discharge of the plaintiff.").

Under the second showing, the plaintiff admits that the defendant's proffered reason could motivate the adverse action, but says that the illegal motivation is more likely than the proffered reason. Id. Under this theory of pretext, a plaintiff relies on the "sheer weight" of the circumstantial evidence of discrimination. Id. However, the amount of circumstantial evidence required is substantial:

> If the barebones elements of a plaintiff's prima facie case were sufficient to make this showing, however, the entire "burden shifting" analysis of McDonnell Douglas and its successors would be illusory. No case could ever be culled out after the prima facie stage and every case would have to be determined

7

> by a jury. We do not believe that this was the intent of Congress or the outcome envisioned by the Supreme Court in its long line of cases implementing employment discrimination legislation. Accordingly, we hold that, in order to make this type of rebuttal showing, the plaintiff may not rely simply on his prima facie evidence but must, instead, introduce additional evidence of . . . discrimination."

Id.

### 2. ELCRA Sex Discrimination: Disparate Treatment

When an ELCRA claim of sex discrimination is based on circumstantial evidence, the McDonnell Douglas burden shifting framework is applied. Wilcoxan v. Minnesota Mineral & Manufacturing Co., 235 Mich. App. 347, 359 (1999). To establish a *prima facie* case, a plaintiff must establish the following elements: "(1) the plaintiff's membership in a protected class, (2) an adverse employment action, (3) the defendant was predisposed to discriminating against members of the plaintiff's protected class, and (4) the defendant actually acted on that predisposition in visiting the adverse employment on the plaintiff." Id. at 360-61. If a defendant responds with a non-discriminatory reason for its action, a plaintiff must show that the defendant's proffered nondiscriminatory reason was not the true reason for the adverse action and that the plaintiff's protected status was a motivating factor in the defendant's decision in order to establish pretext. Town v. Michigan Bell Telephone Co., 455 Mich. 688, 697 (1997).

### 3. Sex Discrimination: Hostile Work Environment

An employee can also assert a claim of sex discrimination if she was subjected to a hostile work environment based on sex. Discrimination in this form occurs "[w]hen the workplace is permeated with discriminatory intimidation, ridicule, and insult that is

8

sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993). To establish a *prima facie* case, a plaintiff must show that (1) she is a member of a protected class, (2) she was subject to unwelcome harassment, (3) the harassment was based on her sex, (4) the harassment created a hostile work environment, and (5) there is a basis for employer liability. Clark v. United Parcel Service, Inc., 400 F.3d 341, 347 (6th Cir. 2005). The *prima facie* elements under the ELCRA largely track the federal standard, but the defendants' conduct must be inherently sexual in nature. See Gilbert v. DaimlerChrysler Corp., 470 Mich. 749, 791 n.67 (2004).

To establish the existence of a hostile work environment a plaintiff must meet both a subjective and objective standard. Bowman v. Shawnee State University, 220 F.3d 456, 463 (6th Cir. 2000) ("The conduct must be severe and pervasive enough to create an environment that a reasonable person would find hostile or abusive and the victim must subjectively regard that environment as abusive."). To determine whether a hostile work environment exists, a court must consider the totality of the circumstances rather than examining specific incidents or classes of incidents in isolation. Williams v. General Motors Corp., 187 F.3d 553, 562 (6th Cir. 1999). A court should consider a number of factors including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. However, the Sixth Circuit has cautioned that "Title VII was not meant to create a 'general civility code' and the 'sporadic use of abuse language, gender-related jokes, and occasional teasing' are not sufficient to establish liability. Clark, 400 F.3d at 352 (quoting Faragher v. City of Boca

Raton 524 U.S. 775, 788 (1998).  In addition, a plaintiff cannot rely on alleged harassment that was not based on the plaintiff's protected status.  Bowman, 220 F.3d at 464 (refusing to consider alleged acts of harassment that were not based on plaintiff's status as a male).

When an employee is harassed by co-workers rather than supervisors, "[a]n employer is only liable if it knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate corrective action." Clark, 400 F.3d at 348.

### 4. Americans With Disabilities Act

When an ADA claim of disability discrimination is based on circumstantial evidence, the McDonnell Douglas burden shifting framework is applied.  See Brenneman v. MedCentral Health System, 366 F.3d 412, 417-18 (6th Cir. 2004).  To establish a *prima facie* case, a plaintiff must demonstrate that "(1) she is disabled; (2) she is otherwise qualified for the position with or without reasonable accommodation; (3) she suffered an adverse employment decision; (4) her employer knew or had reason to know of her disability, and (5) her position remained open." Id. at 417.  The standards for establishing a non-discriminatory reason and pretext do not differ from those under sex discrimination claims under Title VII.

### 5. Persons with Disabilities Civil Rights Act

When a PWDCRA claim of disability discrimination is based on circumstantial evidence, the McDonnell Douglas burden shifting framework is applied.  Bachman v. Swan Harbor Ass'n, 252 Mich. App. 400, 436 n.26 (2002).  To establish a *prima facie* case, a plaintiff must demonstrate that "(1) he is 'disabled' as defined by the statute, (2) the disability is unrelated to the plaintiff's ability to perform the duties of a particular job, and (3)

the plaintiff has been discriminated against in one of the ways set forth in the statute." Chiles, 238 Mich. App. at 473. The standards for establishing a non-discriminatory reason and pretext do not differ from those under sex discrimination claims under Title VII.

### 6. Retaliation

Both Title VII and the ELCRA prohibit retaliation against employees who complain about discrimination. 42 U.S.C. § 2000e-3(a); MICH. COMP. LAWS § 37.2701(a). When a claim of retaliation is based on circumstantial evidence, the McDonnell Douglas burden shifting framework is applied. Chen, 580 F.3d at 402. To establish a *prima facie* case of retaliation, a plaintiff must establish that (1) she engaged in activity protected by Title VII, (2) the exercise of her civil rights was known to the defendant, (3) the defendant took adverse action against the plaintiff, and (4) there is a causal connection between the protected conduct and adverse employment action. Nguyen v. City of Cleveland, 229 F.3d 559, 630 (6th Cir. 2000). The standards for establishing a non-discriminatory reason and pretext do not differ from those under sex discrimination claims under Title VII.

### B. DISCUSSION

### 1. Title VII Sex Discrimination

Schaeffer claims that Tractor Supply violated Title VII when it replaced her as area manager while she was on medical leave.[2] She has established a *prima facie* case of

---

[2]Schaeffer does not appear to claim that her eventual discharge was the result of sex discrimination. Moreover, there is insufficient evidence in the record to establish a *prima facie* case of sex discrimination. Because Schaeffer says that she was replaced when her area manager position was filled, she cannot also say that she was replaced by someone outside of the protected class at the time of her administrative termination. In addition, there is no evidence in the record to suggest that Tractor Supply treated her differently than any other employee who exhausted the six-month non FMLA medical leave that the company provided.

discrimination. As a female, she is a member of a protected class. She previously held the position of area manager and there is nothing in the record suggesting that she was no longer qualified. She was replaced by Torbet, a male who is outside of the protected class. Although she continued to receive her salary and benefits after being replaced as area manager, Schaeffer suffered an adverse employment action. Upon return from medical leave, Schaeffer would have been required to apply for other available jobs and could have obtained another position only by accepting a demotion to a single store manager position or by relocating to a different area or district.

Tractor Supply has provided a legitimate, non-discriminatory reason for replacing Schaeffer as area manager. First, its non-FMLA medical leave policy does not provide job security while the employee is on leave. Schaeffer was aware of this policy. Schaeffer's leave also coincided with Tractor Supply's busy spring season. Tractor Supply says that it decided to replace Schaeffer as area manager because of the added demands that the company faces during March, April, and May.

Schaeffer says that Tractor Supply's proffered reason is pretextual because it could have temporarily assigned her stores to other multi-store managers until she returned to work. Although Tractor Supply could have made a different business decision regarding the management of the stores in Schaeffer's area, this does not establish pretext. As noted above, pretext involves the inquiry: "did [Tractor Supply] fire [Schaeffer] for the stated reason or not?" Chen, 580 F.3d at 400 n.4. Schaeffer merely says that Tractor Supply could have made a decision that would not have been adverse to her. That is true whenever an adverse action is taken against an employee. To establish pretext, Schaeffer must show that Tractor Supply had a discriminatory motive, not that it made a poor

business decision. By asserting that Tractor Supply could have temporarily reassigned her stores, she asks the Court to second-guess Tractor Supply's business decision rather than to assess the credibility of its proffered motive. Challenging Tractor Supply's business judgment does not create a genuine issue of material fact with respect to pretext.

Moreover, Schaeffer's assertion of pretext does not fit within any of the three categories described above. First, she cannot say that the reason has no basis in fact because she admits that her extended medical leave coincided with Tractor Supply's busy seasons. Second, she does not say that she was treated differently than other employees under similar circumstances. While she stated in her deposition that a male area manager was not replaced despite an extended medical leave, he was not similarly situated because his medical leave did not extend into the busy season.

Finally, Schaeffer has not shown that a discriminatory motivation was more likely than Tractor Supply's proffered reason. The only relevant evidence that Schaeffer cites to establish pretext is the fact that the person who replaced her as area manager was a male.[3] As noted above, an indirect showing of pretext relies on the sheer weight of circumstantial evidence of discriminatory intent. Restating a *prima facie* case is not enough. The fact that she was replaced by an individual outside the protected class is an

---

[3]Schaeffer cites a number of other facts which are not relevant to her assertion of pretext. She says that Ordus encouraged Torbet to apply for the area manager position. However, Ordus' encouragement occurred after Giles made the decision to replace Schaeffer as area manager. Further there is no indication that Ordus played any role in the decision to replace Schaeffer. Schaeffer also asserts that the area she managed was custom made for her. Tractor Supply's prior accommodation of Schaeffer's needs is not relevant to a claim of pretext and its decision to maintain the same area after Torbet became manager is merely a business decision that does not suggest pretext.

13

essential element of Schaeffer's *prima facie* case and is not sufficient, standing alone, to support a finding of pretext. As noted in Manzer, to find otherwise would preclude any possibility of summary judgment once a plaintiff established a *prima facie* case. Because Schaeffer is unable to raise an genuine issue of material fact as to whether Tractor Supply's proffered non-discriminatory reason is pretextual, summary judgment is appropriate on her disparate treatment claim of gender discrimination under Title VII.

### 2. Failure to Establish Pretext

Schaeffer and Tractor Supply dispute whether Schaeffer has established a *prima facie* case with respect to her ELCRA, ADA, PWDCRA, and retaliation claims. However, the Court need not resolve these issues because Schaeffer cannot establish a genuine issue of material fact as to pretext. Chen, 580 F.3d at 402 (declining to address plaintiff's prima facie case of retaliation after determining that defendant was entitled to summary judgment on another count based on analysis of pretext). As explained above, Schaeffer is unable to create a genuine issue of material fact as to whether Tractor Supply's proffered reason for replacing her as area manager was pretextual. Because she has provided no additional support for her assertions of pretext, Tractor Supply is entitled to summary judgment on Schaeffer's ELCRA, ADA, PWDCRA, and retaliation claims as well.

### 3. Sex Discrimination: Hostile Work Environment

**a.**

Schaeffer says that she was subjected to a constant stream of sex-based harassment that created hostile work environment. She relies solely on her own deposition testimony to establish that a hostile work environment existed. Tractor Supply denies many of incidents that Schaeffer cites and says that others were gender-neutral.[4] Schaeffer relies on the following incidents to establish that she was subjected to a hostile work environment on the basis of her gender.

In July 2007 Schaeffer traveled to a training session in Nashville with several other managers from Michigan. Schaeffer says that, despite the airline's open seating policy, the other managers refused to let her sit with them. She also says that the other managers questioned her background at JoAnn Fabric and how it correlated to Tractor Supply. When they arrived for the meetings, Schaeffer says that the other managers all sat together at one table, forcing her to sit alone at a different one.

In August 2007 Schaeffer participated in a ride-along with Ordus. Schaeffer says that Ordus told her that she should have accepted a job at GAP because it would have suited her better. She also says that Ordus responded to her comment regarding the lack of female managers by stating that there were one or two previous female managers who "were pushed out" and "didn't last long."

In September 2007 Schaeffer traveled with Brian Steinberg (Steinberg). She says

---

[4]Because Tractor Supply is moving for summary judgment, the Court must construe the facts in a light most favorable to Schaeffer. To the extent that Tractor Supply's denials create credibility issues, the Court will accept Schaeffer's version of the facts for the purposes of this motion.

that he told her that there had never been a female district manager in Michigan. She also says that he referred to JoAnn Fabric as a "female store" and said that she had a "sewing background." In addition she says that he stated that females do not fit in at Tractor Supply.

In October 2007 the Michigan multi-store managers attended a meeting in Detroit. Schaeffer says that all of the other managers sat together on one side of a table, forcing her to sit alone on the other side. She also says that Brian Blausey made fun of the colored cover sheet that she included in a presentation that she gave.

During a January 2008 managers meeting, Schaeffer says that she overheard Ordus say that a high salary was required to get good men to come in and run his stores.

After running a charity race, Brent McKellar (McKellar), a store manager, sent an e-mail to a number of Tractor Supply employees including Schaeffer and a 17-year old female cashier. The e-mail included a picture in which he was only wearing gym shorts and asked how he looked. Although Schaeffer replied to McKellar by congratulating him on his achievement and for donating his time to the cause, she says that she considered the picture to be offensive.

Schaeffer also says that Van Eron continued to have weekly calls with the other multi-store managers after his promotion, but never called her.

Finally, Schaeffer says that the other male managers denied her the opportunity to receive training and feedback because they were slow to return her e-mails, did not return her calls, and did not answer job related question.

**b.**

Based on these incidents, Schaeffer has established the first three elements of a prima facie case of a hostile work environment under Title VII. First, as a female, she is a member of a protected class. Second, the incidents described above were unwelcome and harassing. Third, a reasonable jury could conclude that the incidents were gender-based and would not have occurred had she been male. However, Schaeffer has not established a *prima facie* case under the ELCRA because the none of the incidents were inherently sexual in nature. Therefore, Tractor Supply is entitled to summary judgment with respect to Schaeffer's claim of a hostile work environment under the ELCRA.

The presence of unwelcome harassment that is based gender is not sufficient to establish a *prima facie* case. Schaeffer must also show that gender-based harassment created a work environment that was both subjectively and objectively hostile. Schaeffer's complaints to her supervisors are sufficient to establish the subjective prong. Giles noted after a meeting that Schaeffer felt like "a female in their territory." This statement shows that Schaeffer felt that she was subjected to gender-based hostility which was severe enough to report to a supervisor. Further, she says that the hostile work environment caused her increased blood pressure and required her to take medical leave.

However, Schaeffer has not provided sufficient evidence of gender-based hostility to satisfy the objective prong of the inquiry. Although Schaeffer has cited a number of incidents, they occurred sporadically when she met with other multi-store managers. Such meetings were infrequent and do not appear to have been a significant aspect of her job. In addition, the severity of the incidents was slight. The majority were mere offensive utterances, some of which were arguably more inquisitive than harassing. While the

17

incidents of exclusion included a physical component, they cannot be characterized as threatening or humiliating. The only incident which could be characterized as humiliating is Blausey's statements regarding the color cover sheet she included in her presentation. The only incident which could be considered threatening is McKellar's e-mail, which was sent to Schaeffer's personal account. However Schaeffer's response and the fact that the e-mail was part of a mass distribution suggest that it should be characterized as poor judgment rather than a threat against Schaeffer. These incidents, while bothersome, are not so severe and pervasive that they should interfere with an employee's work performance. As noted above, "Title VII does not create a general civility code, and the sporadic use of abuse language, gender-related jokes, and occasional teasing are not sufficient to establish liability" Clark, 400 F.3d at 352. When compared to the incidents described in prior Sixth Circuit cases, Schaeffer's allegations are simply not substantial enough to satisfy the *prima facie* showing. Therefore, Tractor Supply is entitled to summary judgment with respect to Schaeffer's Title VII claim of a hostile work environment.

**c.**

Even if Schaeffer were able to establish a *prima facie* case of a hostile work environment under Title VII, Tractor Supply would be still entitled to summary judgment because Schaeffer failed to exhaust her administrative remedies before raising this issue in federal court. A court can only consider Title VII claims that are explicitly included in an EEOC complaint or that are reasonable expected to grow out of such a complaint. Strouss v. Michigan Department of Corrections, 250 F.3d 336, 342 (6th Cir. 2001). Schaeffer's EEOC complaints allege disparate treatment discrimination based on her discharge while

on medical leave. Her claim of a hostile work environment was not included in the EEOC complaints and is sufficiently distinct from a claim of gender-based discharge that it cannot be reasonably expected to grow out of the complaints that she filed.

## V. CONCLUSION

For the reasons stated above, Tractor Supply's motion for summary judgment is GRANTED. The case is DISMISSED.

SO ORDERED.

        S/Avern Cohn
        AVERN COHN
        UNITED STATES DISTRICT JUDGE

Dated: June 9, 2010

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, June 9, 2010, by electronic and/or ordinary mail.

        S/Julie Owens
        Case Manager, (313) 234-5160